IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ROBERT HOSSFELD and WES NEWMAN, individually and on behalf of others similarly situated, | Case No. 4:24-mc-00142-ALM |
| Plaintiffs, | Underlying Litigation: Case No. 1:24-cv-02613 |
| v. | United States District Court Northern District of Illinois |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant. | |

**NONPARTY BRAINSTORM XX, LLC'S BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO ALLSTATE INSURANCE COMPANY'S MOTION TO COMPEL NON- PARTY BRAINSTORM XX, LLC D/B/A WWW.ROBOCALLS.CASH TO PRODUCE DOCUMENTS IN RESPONSE TO ALLSTATE'S SUBPOENA *DUCES TECUM* AND QUASH THE SUBPOENA OR IN THE ALTERNATIVE, LIMIT THE SCOPE OF THE SUBPEONA**

Non-Party Brainstorm XX, LLC ("Brainstorm") hereby requests the Court to quash the Subpoena served by Defendant Allstate Insurance Company ("Defendant")or, alternatively, to limit the scope of the Subpoena, extend the deadline by which to respond to same, and to seal any and all trade secrets or proprietary commercial information that non-party Brainstorm is required to submit to Defendant. In support of this Motion, non-party Brainstorm respectfully shows the Court as follows:

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ 2

TABLE OF AUTHORITIES ......................................................................................................... 3

INTRODUCTION .......................................................................................................................... 4

I. Procedural History ..................................................................................................................... 4

II.   Factual Background ............................................................................................................... 5

ARGUMENT .................................................................................................................................. 7

I. Allstate's Subpoena Must Be Quashed, or in the Alternative, Modified, Pursuant to  Fed. R. Civ. P. Rules 26 (b)(2)(c) and 45(d)(3)(A) ................................................................................ 7

   A.   Allstate Can Obtain the Discovery from the Plaintiff ........................................................ 8

   B.   Allstate's Subpoena is Overly Broad and Unduly Burdensome ........................................ 9

   C.   Allstate's Subpoena Failed to Allow Reasonable Time to Comply ................................ 12

II.   The Court should Quash, or in the Alternative, Modify the Subpoena Because it Requires Disclosure of Trade Secrets and Proprietary Commercial Information .................................... 13

III.   Allstate Should Pay for Compton's Costs Associated with the Subpoena ........................... 15

CONCLUSION ............................................................................................................................. 17

CERTIFICATE OF SERVICE ..................................................................................................... 19

CERTIFICATE OF CONFERENCE ............................................................................................ 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Andra Group, LP v. JDA Software Group, Inc.*, 2015 WL 1636602, at *5 (N.D. Tex. Apr. 13, 2015) .................................................................................................................................. 10

*AngioScore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) ... 10

*Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D. N.Y. 2010) ........................................... 10

*Dr. Greens, Inc. v. Spectrum Labs, LLC*, 2012 WL 3111746, at *3 (D. Kan. July 31, 2012) ...... 11

*Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004)...................................................................................... 12

*Haber v. ASN 50th St.*, LLC, 272 F.R.D. 377, 382 (S.D. N.Y. 2011) ........................................... 9

*Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998).............................................. 10

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ................................ 9, 10

**Federal Rules**

Fed. R. Civ. P. 26............................................................................................................................ 8

Fed. R. Civ. P. 37.......................................................................................................................... 15

Fed. R. Civ. P. 45.............................................................................................................. 8, 13, 16

Fed. R. Evid. 401 .......................................................................................................................... 10

**Statutes**

18 U.S. Code § 1839(c).................................................................................................................. 14

## **INTRODUCTION**

**I.      Procedural History**

On or about April 1, 2024, Robert Hossfeld ("Hossfeld") and Wes Newman ("Newman" and together with Hossfeld, "Plaintiffs"), filed a Class Action Complaint ("Complaint") in the United States District Court for the Northern District of Illinois, in an action styled *Robert Hossfeld and Wes Newman, individually and on behalf of others similarly situated v. Allstate Insurance Company*, Case No. 1:24-cv-02613 (N.D. Ill.) (the "underlying action"). The Complaint alleges that Allstate violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), by purportedly failing to institute a proper do-not-call policy and for placing unsolicited calls to individuals, including Plaintiffs, who were on Allstate's internal do-not-call list ("DNC list"). Plaintiffs seek the certification of a class of allegedly similarly situated individuals. Compl. at ¶ 122.

Allstate alleges that on August 26, 2024, it served a Subpoena on non-party Brainstorm but has not filed its proof of service with the Northern District of Illinois court.

On or about September, 2024, non-party Brainstorm delivered via courier in paper a Motion to Quash to the NDIL and served Allstate's counsel with said Motion.

On November 22, 2024, Allstate filed its Motion to Compel (the instant action) and non-party Brainstorm's response was due December 6, 2024.

On January 1, 2025, non-party Brainstorm filed an Unopposed Motion to Extend the Deadline for responding to Allstate's Motion to Compel.

On January 3 2025, this honorable Court granted non-party Brainstorms Motion to Extend the response deadline to January 3, 2025.

It is the Subpoena from the Northern District of Illinois, Case No. 1:24-cv-02613, that

non-party Brainstorm moves to quash in this case.

## II. Factual Background

Brainstorm XX, LLC is owned by Lee Compton ("Mr. Compton"), a consumer credit expert with twenty-five-plus (25+) years of experience. In 2013, Mr. Compton decided to shift careers and began managing the non-attorney functions of a law firm's consumer credit section. Among other duties, Mr. Compton served as an intake coordinator and was responsible for identifying potential cases of consumer abuse by creditors and debt collectors, as many such creditors and debt collectors would engage in predatory auto-dials and robocalls to collect alleged debts from the firm's clients. It was during this time that Mr. Compton would come to learn that a vast majority of such calls violated the TCPA.

Mr. Compton would leave that law firm in 2016 and begin working from home on a multitude of projects. During the summer of 2018, Mr. Compton was constantly disturbed by telephone calls from telemarketers and robocallers attempting to sell him a wide array of products and services. At one point, Mr. Compton was getting anywhere from 10 to 20 calls per day. Knowing that these calls were illegal, Mr. Compton looked up the identities of those behind the calls, drafted pre-litigation demand letters, and mailed them to the companies responsible.

Mr. Compton's first few tries proved successful. It was not long before word spread to his friends and colleagues about his successes. Mr. Compton inquired on social media about interest in a group focused on stopping the illegal robocallers and making them pay for their wanton disrespect of the TCPA. Mr. Compton was able to quickly assemble a group of approximately fifty (50) people on Facebook who were as frustrated with the incessant and illegal telemarketing calls.

That group would answer the telemarketing calls they were receiving, collect information from the callers, and then identify the company responsible for the call. Members were then able

to send cease and desist letters demanding payment of the TCPA's civil penalties. People who sent the cease and desist letters started seeing a reduction in calls and relatively sizable settlement checks, ranging from hundreds of dollars to thousands of dollars.

Mr. Compton developed the "Turning Robocalls Into Cash" kit ("the Course") to help consumers/individuals battle the onslaught of spam calls that nearly everyone experiences. The Course details the practical steps that even non-lawyers can take to stop receiving robocalls by enforcing their rights under the TCPA.

In addition to the Course, Mr. Compton's company, Brainstorm XX, LLC, owns and runs a forum on his website, www.robocalls.cash, for those interested in "keep[ing] up with the most cutting-edge techniques for stopping robocalls...." Anyone can join the forum, regardless of whether they purchased the Course, for a monthly fee and provided they pass the vetting process by the forum's administrators.

In January of 2018, Mr. Compton reached out via social media to consumer reporter Steve Noviello at Fox 4 News in Dallas, Texas. Mr. Noviello used the Course himself and proceeded to collect $5,750.00 in a little under two (2) weeks. At that point, he decided to do a feature story on Fox 4 about the Course. That story, which has since won an Emmy Award, went viral and Noviello has since presented the same story in ten (10) other major markets nationwide. Since then, Mr. Compton and his course have been featured in many news stories and he has become a very well known consumer advocate.

Allstate has alleged that Plaintiff Newman is a purchaser of the Course and is a member of the forum on the www.robocalls.cash website.

In the Subpoena, Allstate requests non-party Brainstorm to produce:

> "1. Copies of any and all records referring or relating to Robert Hossfeld and/or Wes

Newman for the period of April 1, 2020 to the present, including, but not limited to the following:

    a. All records, including documents and correspondence, relating to any membership accounts created and/or held by Robert Hossfeld and/or Wes Newman, including but not limited to information, usernames, and applications submitted for such accounts.

    b. All records, including documents and correspondence, constituting or relating to any posts, reposts, replies, or other similar postings made by or on behalf of Robert Hossfeld and/or Wes Newman, on any forum run by, affiliated with, and/or maintained by www.robocalls.cash.

    c. All records, including documents and correspondence, constituting or relating to any communications exchanged between Robert Hossfeld and Wes Newman, on the one hand, and any other individual on any forum run by, affiliated with, and/or maintained by www.robocalls.cash, on the other hand, including but not limited to true and correct copies of the communications attached hereto as Appendix 1.

    d. All records, including documents, and correspondence, referring or relating to Robert Hossfeld, Wes Newman, and/or any of the following telephone numbers:

    i. 940-631-4523;
    ii. 254-743-8888;
    iii. 254-217-3013;
    iv. 254-394-4157;
    v. 512-791-8555; and
    vi. 719-571-0312.

2. For the period of April 1, 2020 to the present, copies of any terms and conditions, rules, or other similar documents regarding www.robocalls.cash, including for any forums hosted on this domain.

3. For the period of April 1, 2020 to the present, copies of any manuals, instructions, or other similar documents provided to Robert Hossfeld and/or Wes Newman referring or relating to the TCPA, robocalls, and/or telemarketing, including but not limited to "Turning Robocalls Into Cash."

## ARGUMENT

### I. **Allstate's Subpoena Must Be Quashed, or in the Alternative, Modified, Pursuant to Fed. R. Civ. P. Rules 26 (b)(2)(c) and 45(d)(3)(A)**

Under Federal Rule of Civil Procedure 45(d)(3)(A), the Court "must quash or modify" the Subpoena at issue here, because the discovery sought can be obtained from the Plaintiff Newman

and it subjects Brainstorm to undue burden and requires disclosure of privileged or other protected matter. Fed. R. Civ. P. Rules 26 (b)(2)(c) and 45(d)(3)(A).

  A. **Allstate Can Obtain the Discovery from the Plaintiff**

"On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. Rules 26 (b)(2)(c).

Plaintiff Newman is in possession of, or has access to, the discovery Allstate is requesting from Brainstorm, a nonparty witness in this matter. Plaintiff Newman would be in possession of, and have access to the forum and can produce the information Allstate seeks from the forum, if he is a member. Allstate obtaining the information it seeks from the Plaintiff Newman is more convenient, less burdensome, and less expensive than having Brainstorm produce the information. Allstate has had ample time to obtain the information from the Plaintiff Newman, and it appears there is still time. Allstate's counsel told Brainstorm's counsel on December 31, 2024, that it has not requested the information from Plaintiff Newman and has instead, issued said Subpoena to Brainstorm. If Allstate, after requesting the information from Plaintiff Newman, has a difficult time obtaining the information from the Plaintiff, Allstate can file a Motion to Compel against Plaintiff Newman in the NDIL matter, Case No. 1:24-cv-02613.

Brainstorm has no dog in this fight and the information Allstate seeks can be obtained from the Plaintiff Newman. Non-party Brainstorm should not have to shoulder the expense (time and money) to produce information that Allstate can easily procure from Plaintiff Newman. We pray

that this Court deny Allstate's Motion to Compel and quash Allstate's Subpoena, or in the alternative, modifies it to limit its scope.

### B. Allstate's Subpoena is Overly Broad and Unduly Burdensome

"To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted). The Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Id.* (footnote omitted).

Allstate's requests are unreasonable and must be quashed, or at least in the alternative modified, as each of the six factors weigh in favor of finding that the Subpoena subjects Mr. Compton to an undue burden.

Regarding the first factor, the relevance of the information requested, "[w]here a party has subpoenaed a non-party, '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Haber v. ASN 50th St.*, LLC, 272 F.R.D. 377, 382 (S.D. N.Y. 2011) (quoting *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D. N.Y. 2010) (citations omitted)); see also *AngioScore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) (citations omitted). "[R]elevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998).

Therefore, "'[w]hether [a requesting party's] discovery requests [to a non-party served with a subpoena] are relevant… turns on whether they are 'reasonably calculated' to lead to evidence admissible as to [its] claims' or defenses against its opponent in the underlying case." *Andra Group, LP v. JDA Software Group, Inc.*, 2015 WL 1636602, at *5 (N.D. Tex. Apr. 13, 2015) (quoting *Wiwa*, 392 F.3d at 820).

The documents requested will not aid Allstate's ability to defend against the Plaintiffs' allegations. The Plaintiffs in NDIL Case No. 1:24-cv-02613 allege that Allstate violated the TCPA. Allstate has not put forth a defense to the cause of actions relating to the TCPA and have instead only denied all of Plaintiffs' allegations. Thus, Allstate must show that any of the documents requested go to disproving the allegations set forth by the Plaintiffs in NDIL Case No. 1:24-cv-02613.

Allstate has failed to show how any statements made by Plaintiff Newman in Brainstorm's forum make the Plaintiffs' allegations that Allstate violated the TCPA any less probable—in other words. Any statement made by Plaintiff Newman would be deemed inadmissible due to a lack of relevancy. See Fed. R. Evid. 401. The requests put forth by the Subpoena serve no purpose other than to cost Brainstorm time and money to comply with the Subpoena in addition to possibly destroying its trade secret rights by making his proprietary commercial information public. See *infra* Section II.

The second factor considers the need of the party for the documents. This factor coincides with the first factor in this case. Allstate has not made clear why they need the information and documents they are requesting, and it is not readily apparent from context how the documents benefit Allstate in any way. Thus, Brainstorm contends that Allstate is not in need of the items requested to put forth an adequate defense.

The third factor concerns the breadth of the document requests. The requests in Allstate's Subpoena are overly broad and ambiguous due to a lack of instructions or definitions attached to Allstate's requests. The requests lack any definition and is hardly limited or narrowly tailored, e.g., provides a very long time period, uses broad language (such as "all communication"), and uses imprecise language (such as "relating to"), the requests are overly broad with too wide a breadth.

The fourth factor concerns the time period covered by the request. This factor is easily in Brainstorm's favor. Allstate has requested information since April 1, 2020, nearly half a decade. This will lead to Brainstorm producing information that has no relevance to Plaintiffs' claims against Allstate.

The fifth factor concerns the particularity with which the party describes the requested documents. A court "may find a particular request for discovery overly broad or unduly burdensome on its face when 'it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope.'" *Dr. Greens, Inc. v. Spectrum Labs, LLC*, 2012 WL 3111746, at *3 (D. Kan. July 31, 2012) (footnote omitted). As noted above, the requests lack any sort of definitions or instructions, which causes ambiguity in the requests. For example, the term "posts" is undefined and could mean any subject posts made by Plaintiff Newman, or it could mean anything posted by Plaintiff Newman in the forum (which would include comments he made in posts originated by other users). In an attempt to ensure the request is all encompassing without properly providing instructions and definitions, Allstate made its requests overly broad and ambiguous.

Finally, the sixth factor concerns the burden imposed by the Subpoena. Due to the ambiguous and overly broad nature of the requests, non-party Brainstorm will suffer great time and expense in parsing through all related information and documents to comply with the

Subpoena. See *infra* Section III. Defendants did not limit the requests for a reasonable amount of time or scope or make them with particularity, which will force Brainstorm to spend much time, money, and resources in determining if any particular document falls under the Subpoena.

Accordingly, we pray this Court quashes, or in the alternative, modifies, the Subpoena, given that it is unduly burdensome under the factors as detailed above.

### C.      Allstate's Subpoena Failed to Allow Reasonable Time to Comply

Rule 45 does not specify what length of time is a "reasonable time to comply," as reasonableness varies depending on the circumstances of each case. See *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004). Here, as noted above, Allstate has not filed a return of service with the NDIL Court, Case No. 3:21-cv-00818-S. The Subpoena gave Mr. Compton a deadline of September 16, 2024, effectively only giving him 25 calendar days to comply. 25 calendar days is an unreasonable amount of time to review and produce the tremendous amount of information that would be required to comply with Allstate's Subpoena, particularly in view of its nearly half a decade time period.

If the Subpoena is not quashed or significantly modified, it will take a substantial amount of time for non-party Brainstorm to properly respond to the Subpoena. As noted above, because the Subpoena has no instructions or definitions limiting the scope of the request, it commands Brainstorm to parse through every single forum post individually to check if Plaintiff Newman either made a post or left a comment throughout the forum's history (as either a post or comment could be construed as a "post" without clarification). Furthermore, at least as currently written, the requests will necessarily encompass trade secrets and proprietary commercial documents, requiring additional review. See *infra*, Section II.

Therefore, the Court must quash the Subpoena, or in the alternative sufficiently modify the Subpoena to limit the requests put forth in addition to providing Mr. Compton with a reasonable amount of time to comply.

**II.     The Court should Quash, or in the Alternative, Modify the Subpoena Because it Requires Disclosure of Trade Secrets and Proprietary Commercial Information**

In its discretion, a court in the district of compliance "may, on motion, quash or modify the subpoena if it requires... disclosing a trade secret or other confidential research, development, or commercial information...." Fed. R. Civ. P. 45(d)(3)(B)(i). However, A court may order production despite the possibility of disclosing trade secrets or other confidential information if the "serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C).

As noted above, the Subpoena seeks "[a]ll records, including documents and correspondence, relating to…" a myriad of different information. Through its overbroad requests, Allstate has commanded that non-party Brainstorm provide nearly a full copy of its vetted-members-only-behind-a-pay-wall forum so it can "peek behind the curtain" and learn about how people in the US are asserting their rights under the TCPA. Allstate is a competitor, for lack of a better word, of non-party Brainstorm Because the Subpoena lacks any instructions or definitions, the Course's documents given to Plaintiff Newman by non-party necessarily fall under the Subpoena's scope as a "record." The documents that make up the Course are behind a paywall, protected by a registered copyright, and any purchasers agree to a Terms of Service contract which forbids sharing any details of the Course, as unrestricted access to these documents would destroy non-party Brainstorm's entire business model.

A trade secret is "all forms and types of ...business... information...whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S. Code § 1839(c).

Brainstorm has taken reasonable steps to keep its business information, such as the names of its customers and what is shared in the forum, secret. All members of the forum agree to Membership Terms as a requirement for becoming part of the form and must download a copy before finalizing an application to be admitted into the forum; see Exhibit A. The Membership Terms comprise a Confidentiality and Intellectual Property clause that requires, in part:

> Member agrees to the following obligations of confidentiality with respect to Information received through participation and to the resulting intellectual property of Contributions made:
> • To maintain all Information in confidence, using the same degree of care the Member uses to protect its own proprietary information of like importance, but in no event less than a
> reasonable degree of care. Information disclosed shall be kept confidential to Members only.
> • To disclose Information only to its other Members and to comply with the confidentiality terms set out in this Agreement.

Mr. Compton, as the manager of Brainstorm, is also bound by the Confidentiality and Intellectual Property clause and if forum information became public record, it may result in a breach of the Membership terms. The information in the forum, including the names of members of the forum, is not readily accessible to the public and is not easily ascertained. Non-party Brainstorm derives independent economic value from the information. If the information in the

forum becomes public, non-party Brainstorm will lose his competitive advantage and his trade secret rights will evaporate.

Additionally, also as previously stated, the information requested will not benefit Allstate's ability to defend itself in the NDCIL Case No. 3:21-cv-00818-S. The information will neither prove or disprove whether Allstate violated the TCPA, as the Plaintiffs in that case allege. Any communications by Plaintiff Newman in the forum regarding the TCPA serve no purpose other than causing Brainstorm to reveal to the world the details of private conversations within the form. Further, portions of Brainstorm's course, and its trainings, may be revealed to the public for free.

Furthermore, as previously stated, the trade secrets and proprietary information associated with the Course are the cornerstone behind Brainstorm's business model. For the confidential information in and relating to the Course to become free to the public would severely harm non-party Brainstorm's business, and there is no adequate remedy available for such destruction of its trade secret information.

Therefore, to the extent the Subpoena is not quashed, but is modified, non-party Brainstorm would seek to file any documents it produces under seal, and would ask this Court to enter a protective order under Rule 37 to place its trade secret and proprietary commercial documents and information under seal. Fed. R. Civ. P. 37.

### III.     **Brainstorm's Objections Are Not Waived**

This Court may consider a noncompliant brief when the noncompliance does not prejudice the opposing party. *Grant v. Cuellar*, 59 F.3d 523, 525 (5th Cir. 1995).

As Allstate admits, Brainstorm, as a pro se non-party, did serve it with its Motion to Quash and delivered a paper copy by courier to the NDIL to be filed in Case No. 3:21-cv-00818-S. For

reasons not known to Brainstorm, the honorable Court did not enter those papers into the record. Brainstorm speculates that the papers may not have complied with the NDIL rules and were rejected. As held in *Grant v. Cuellar*, this honorable Court can consider its Motion even though it was noncompliant. There is no prejudice to Allstate if the Court considers Brainstorm's Motion to Quash. Allstate can request the information from Plaintiff Newman, which it has not attempted to yet.

### IV.     Allstate Should Pay for Compton's Costs Associated with the Subpoena

As described above, the burden and expense to respond to the Subpoena is substantial. Accordingly, non-party Brainstorm requests that the Court require Allstate to reimburse it for any and all costs, expenses, and fees related to responding to Allstate's Subpoena. See Fed. R. Civ. P. 45(d)(2)(B)(ii) (the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

Rule 45(d)(1) mandates that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

As discussed above, Allstate failed in its duty in three key ways: (1) by serving Brainstorm with a Subpoena that is overly broad and unduly burdensome and failing to adequately to limit the scope of the requests; (2) by failing to give Brainstorm a reasonable time to comply with said Subpoena; and (3) by requiring Brainstorm to turn over trade secrets or confidential information, or imposing an undue burden on it to exclude that information from production.

The costs non-party Brainstorm faces in complying with the Subpoena are great, ranging anywhere from thousands to tens of thousands of dollars in lost wages and attorney's fees. Considering all of the circumstances presented, an award of Brainstorm's expenses is warranted and appropriate.

## **CONCLUSION**

Allstate's Subpoena to non-party Brainstorm requests information that Plaintiff Newman has in his possession, is overly broad and unduly burdensome, and includes a request to disclose trade secrets and proprietary commercial information and documents. As it is currently written, without additional time and more specific, narrowly-tailored requests, Brainstorm will suffer undue burden and significant expense in attempting to comply with the Subpoena. For these reasons, the Subpoena should be quashed, or in the alternative, modified pursuant to Rules 26(b)(2)(c) and 45(d)(3)(A). Moreover, the Court should exercise its discretion to quash or modify the Subpoena under Rule 45(d)(3)(B)(i) because it requires the disclosure of trade secrets and other confidential commercial information, or, in the alternative, should enter a protective order regarding those documents. Furthermore, because Defendants failed to take any reasonable steps to avoid imposing this undue burden or expense, and in fact, did nothing but create an undue burden and expense on Brainstorm, Allstate should pay for Brainstorm's costs associated with the unduly burdensome Subpoena pursuant to Rule 45(d)(1).

Therefore, Brainstorm respectfully requests this Court to quash the Subpoena served on it by Allstate, or in the alternative, modify it, enter a protective order, and require Allstate to pay for Brainstorm's costs associated with responding to the Subpoena. Brainstorm respectfully requests such other relief as this Court deems appropriate.

January 3, 2025                                    Respectfully Submitted,

                                                                                   /s/Jeanette M. Braun
                                                                                  Jeanette M. Braun
                                                                                  docket@brauniplaw.com
                                                                                  IL Bar Member 6332483
                                                                                  Braun IP Law, LLC
                                                                                  1600 W Lake Street, Suite 103B
                                                                                  Addison, IL 60101
                                                                                  312-373-0330

                                                                                  *Attorney for Non-party Brainstorm XX, LLC*

-19-

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on January 3, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

      /s/JeanetteMBraun
      Jeanette M. Braun

**CERTIFICATE OF CONFERENCE**

      The undersigned certifies that on December 31, 2024, I conferred with Allstate's counsel in good faith conferred in an effort to resolve the dispute without court action.

      /s/JeanetteMBraun
      Jeanette M. Braun